## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

HADASSAH MARA COHEN,       )
      )
        Plaintiff,       )
vs.       )       NO.  CIV-05-1388-HE
      )
DR. C. KIM WINKLEMAN, PRESIDENT,       )
COMANCHE NATION COLLEGE, and       )
COMANCHE NATION COLLEGE       )
      )
        Defendants.       )

## ORDER

Plaintiff is the former Director of Planning, Operations and Assessment for the Comanche Nation College,[1] an institution established by the Comanche Nation to promote educational opportunities for Comanche tribal members and others.  According to the allegations of her complaint, plaintiff entered into an Employment Agreement with the college in June, 2005, which provided for a three year term of employment at an annual salary of $55,000.[2]  Defendant Winkleman, the president of the College, executed the agreement on its behalf.

Under the pertinent terms of the agreement, plaintiff's employment could be terminated by the College in one of two ways: (1) termination for cause, based on substantive

---

[1]In certain of the documents referring to the college it is identified as the Comanche Nation Tribal College.

[2]The Employment Agreement was referenced in the complaint as Exhibit A, but not actually attached.  A copy was attached to defendants' motion to dismiss.  The parties do not appear to dispute that the attached contract was executed as indicated and is an accurate copy of the agreement.

standards set out in the agreement and which triggered certain procedural rights, and (2) termination without cause "upon 30 days written notice, and with buy out of the remainder of this Contract."  Employment Agreement, para. IV(B)(2)(a).  The agreement also provides that it shall be governed by the laws of the Comanche Nation and that "[a]ny action under this Agreement shall be brought in Tribal Court."  Employment Agreement, para. VIII(A).

Plaintiff alleges that on September 9, 2005, the College notified her of her termination and refused to pay further salary or compensation under the contract.  Complaint, para. 5.[3] Plaintiff invokes the jurisdiction of this court to assert two claims arising out of these circumstances, a claim for breach of contract and a claim for violation of the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §1301 *et seq.*   She seeks to recover in excess of $265,000 in damages.

Defendants have moved to dismiss the case for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) or, alternatively, for failure to state a claim under Rule 12(b)(6).  The thrust of defendants' argument is that, due to the sovereign immunity of the Comanche Nation, the court lacks subject matter jurisdiction of the claims against both the College and Dr. Winkleman.  Plaintiff acknowledges the potential applicability of the sovereign immunity doctrine to this suit, but argues it is subject to the jurisdictional basis recognized in Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes, 623 F.2d 682 (10th Cir. 1980), *cert. denied* 449 U.S. 1118, *reh. denied*, 450 U.S. 960 (1981) ("Dry Creek

---

[3]Although the complaint does not explicitly say so, it essentially alleges that the termination was without cause.

Lodge" hereafter).

Discussion

It is fundamental that Indian tribes, as an aspect of their retained sovereignty, possess immunity from suit.  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978). The immunity extends not only to the tribe but also to its officers acting in their official capacities. Id. at 71-72; *see also* Fletcher v. U.S., 116 F.3d 1315 (10th Cir. 1997).   As a result, Indian tribes and tribal officials are subject to suit only where Congress has authorized it or where the tribe has waived its immunity.  Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc., 523 U.S. 751 (1998).  "Congressional waivers of tribal sovereign immunity, however, cannot be implied but must be unequivocally expressed." Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor, 187 F.3d 1174, 1181 (10th Cir. 1999).  Similarly, waiver by the tribe will be found to exist only where the waiver is clearly and unequivocally expressed.  E.F.W. v. St. Stephen's Indian High School, 264 F.3d 1297 (10th Cir. 2001).

There is no suggestion here, by either party,  that either Congress or the Comanche Nation has waived sovereign immunity insofar as a claim for breach of contract, as such, is concerned.  Accordingly, the court concludes the doctrine of sovereign immunity bars pursuit of a breach of contract claim here and that plaintiff's breach of contract claim must be dismissed for lack of jurisdiction.

The appropriate disposition of the jurisdictional question as to plaintiff's claim under

the Indian Civil Rights Act is less clear.[4]  The Supreme Court has concluded that the ICRA

did not waive tribal immunity in general and that Congress intended the Act to waive tribal

immunity only as to habeas corpus relief.  Santa Clara Pueblo, 436 U.S. at 60-61; Ordinance

59 Ass'n v. U. S. Dep't of the Interior, 163 F.3d 1150, 1154 (10th Cir. 1998).   Its conclusion

in this regard was premised, in substantial part, on the assumption that tribal forums were

available to vindicate the rights created by the ICRA and that tribal courts are "appropriate

forums for the exclusive adjudication of disputes affecting important personal and property

interests of both Indians and non-Indians."   Santa Clara Pueblo, 436 U.S. at 65.   Left

unanswered by Santa Clara Pueblo was the question of what happens when, as a practical or

legal matter, tribal courts are not available to resolve particular claims arising under the Act.[5]

That question was answered, for at least some situations, in Dry Creek Lodge.[6]  In that

---

[4]The ICRA provides, as a matter of statute, for many of the same protections against tribal authority as would, in the case of federal or state authority, be provided as a matter of constitutional law. The statutory rights protected by the ICRA include the requirement that no tribe exercising powers of self government "deprive any person of property without due process of law." 25 U.S.C. §1302(8).

[5]In certain circumstances, nonjudicial tribal institutions may constitute an available tribal forum. Santa Clara Pueblo, 436 U.S. at 66. Here, however, the agreement between the parties expressly limits enforcement to "Tribal Court." Employment Agreement, para. VIII(A).

[6]Given the broad conception of tribal sovereignty recognized in Santa Clara Pueblo, the rule in Dry Creek Lodge has been narrowly construed by all subsequent Tenth Circuit cases and has been criticized or rejected outright by other courts. See e.g., Walton v. Tesuque Pueblo, ___ F.3d ___, ___ (10th Cir. 2006) (Dry Creek exception must be construed narrowly to prevent a conflict with Santa Clara Pueblo and has "'minimal precedential value'") (quoting Ordinance 59 Ass'n, 163 F.3d at 1158). Nonetheless, it is difficult to argue with the underlying premise of Dry Creek Lodge — that for every right there should be a remedy. Dry Creek Lodge, 623 F.2d at 685 ("There must exist a remedy for parties in the

4

case, the Court of Appeals distinguished <u>Santa Clara Pueblo</u> and concluded that, in certain narrow circumstances, an action could be maintained in federal court against a tribe under the ICRA notwithstanding sovereign immunity.  In order to fall within the parameters of the <u>Dry Creek Lodge</u> rule, three elements must be present.  A plaintiff must demonstrate that (1) the dispute involves a non-Indian party, (2) a tribal forum is not available, and (3) the dispute involves an issue falling outside internal tribal affairs.  <u>Walton v. Tesuque Pueblo</u>, ___ F.3d ___ , ___ (10th Cir. 2006); <u>Ordinance 59 Ass'n</u>, 163 F.3d at 1156; <u>Dry Creek Lodge</u>, 623 F.2d at 685.

Here, plaintiff alleges that she is not a member of the Comanche Nation (complaint, para. 8) and is apparently a non-Indian.  The first element of the <u>Dry Creek Lodge</u> test is satisfied.

With respect to the availability of a tribal forum, plaintiff alleges that there is no tribal court that has been established by the Comanche Nation.  Complaint, para. 7.  Defendants respond that the Court of Indian Offenses (also known as a "CFR Court") operates as a tribal court for the Comanche Nation in civil matters.[7]  Plaintiff counters that the CFR Court is not

---

*position of plaintiffs to have the dispute resolved in an orderly manner.  To hold that they have access to no court is to hold that they have constitutional rights but have no remedy.")  In any event, as to cases falling within its parameters, <u>Dry Creek Lodge</u> is the law in this circuit.*

[7]See <u>Tillett v. Lujan</u>, 931 F.2d 636, 640 (10th Cir. 1991), noting that CFR courts also function as tribal courts.  "[T]hey constitute the judicial forum through which the tribe can exercise its jurisdiction until such time as the tribe adopts a formal law and order code."

an available forum, as a tribe may not be sued there unless the tribe waives its immunity.[8]

Plaintiff states that she has sought such a waiver from the defendants, but they have not

provided it.  Further, plaintiff states her counsel has been advised by defendants' counsel that

the Comanche Nation will not consent to this suit.  The defendants' silence as to these

assertions leaves the court with considerable concern that the assertions are accurate.

However, it is unnecessary to resolve the question here, as the plaintiff's submissions make

clear that she has not yet filed suit or otherwise formally pursued this matter with the CFR

court.  Unlike the rule that ordinarily applies as to the exhaustion of remedies, it is not

enough in these circumstances for plaintiff to allege that resort to the CFR court would be

futile.  For purposes of the Dry Creek Lodge exception, the cases make clear that

"speculative futility is not enough to justify federal jurisdiction."  White v. Pueblo of San

Juan, 728 F.2d 1307, 1313 (10th Cir. 1984).  Rather, a plaintiff must actually seek

adjudication of the issue in the tribal court.  Bank of Oklahoma v. Muscogee (Creek) Nation,

972 F.2d 1166, 1170 (10th Cir. 1992).  As plaintiff has not done so here, the court concludes

the second element of the Dry Creek Lodge test — non-availability of a tribal forum — has

not been established.

Similarly, the court concludes plaintiff has not demonstrated that this conflict is one

outside internal tribal affairs.  There is no definitive guidance from the Tenth Circuit on the

---

[8]25 C.F.R. §11.104(e) provides: "A tribe may not be sued in a Court of Indian
Offenses unless its tribal governing body explicitly waives its tribal immunity by tribal
resolution or ordinance."

application of this element to the present circumstances.  Cases which have rejected application of the Dry Creek Lodge rule on this basis have generally involved matters which clearly implicated internal tribal affairs.  *E.g.,* Ordinance 59 Ass'n, 163 F.3d at 1156 (dispute involving the validity, application and enforcement of a tribal enrollment provision).[9]  It is far less clear that the employment of a nonmember of the tribe as a college administrator, who is involved in the activities of a tribal educational institution, is an "internal" matter. However, given the various expressions to the effect that the Dry Creek Lodge exception should be narrowly construed,[10] together with the suggestion from the Supreme Court in other contexts that tribal jurisdiction may extend to regulation of contractual or commercial dealings with nonmembers,[11] the court concludes that plaintiff has not shown this dispute to involve matters outside the internal affairs of the tribe.[12]

Accordingly, as plaintiff has not shown either the nonavailability of a tribal forum or

---

[9]See also Tillett v. Lujan, 931 F.2d 636 (10th Cir. 1991) (issues as to recall of officers and misuse of tribal funds are "intratribal dispute") and cases cited therein at 642.

[10]See Ramey Constr. Co. v. Apache Tribe, 673 F.2d 315, 319, n.4 (10th Cir. 1982), suggesting the Dry Creek Lodge rule should be limited to situations involving "particularly egregious allegations of personal restraint and deprivation of personal rights."

[11]Montana v. United States, 450 U.S. 544, 565 (1981) ("A tribe may regulate, through taxation, licensing or other means, the activities of nonmembers who enter into consensual relationships with the tribe or its members, through commercial dealings, contracts, leases or other arrangements.")

[12]Two unpublished decisions of the Tenth Circuit suggest the same conclusion. Gallegos v. Jicarilla Apache Nation, 97 Fed. Appx. 806 (10th Cir. 2003) (wrongful termination claims of tribal police officer held to be an internal tribal affair); Sulcer v. Davis, 986 F.2d 1429 (10th Cir. 1993)(unpub. disp.) (wrongful termination claims of tribal director of communications held to be an internal tribal affair).

the existence of a conflict outside the tribe's internal affairs, the Court concludes the <u>Dry Creek Lodge</u> rule is inapplicable here and that, in light of the Comanche Nation's sovereign immunity, this court lacks subject matter jurisdiction to proceed.

The circumstances of this case are, or at least may become, troubling.  If, upon plaintiff's further efforts to pursue her claims in CFR court, sovereign immunity is not waived, the effect will be to deny plaintiff any forum for the vindication of her rights.  If her claims are actually meritorious,[13] she will have been denied a remedy for the violation of her rights.[14]  Such a result would be manifestly unfair to plaintiff and would implicate precisely the same underlying concerns as gave rise to the <u>Dry Creek Lodge</u> rule.  Further, it would constitute the sort of use of the doctrine of sovereign immunity as discourages others from entering into commercial relationships with Indian tribes and which gives rise to the periodic calls for Congressional limitation or elimination of the doctrine of sovereign immunity.[15]  Hopefully, the Comanche Nation's further decisions in this matter will appropriately take those considerations into account.

In any event, for the reasons set forth above, the court concludes it lacks subject

---

[13]The court intimates no view on the substantive merits of plaintiff's claims.

[14]The court finds unpersuasive defendants' suggestion that a contract dispute does not rise to the level of a matter the ICRA would address.  The sort of contractual expectancy as is involved here plainly involves property, the deprivation of which implicates constitutional interests.  <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532 (1985).  Further, <u>Dry Creek Lodge</u> itself involved the deprivation of property rights (interference with ingress and egress to property).

[15]<u>Santa Clara Pueblo</u>, 436 U.S. at 57: "Congress has plenary authority to limit, modify or eliminate the powers of local government which the tribes otherwise possess."

matter jurisdiction to resolve this controversy.  Defendants' motion to dismiss is therefore GRANTED and this case DISMISSED.

**IT IS SO ORDERED**.

Dated this 17th day of April, 2006.

JOE HEATON
UNITED STATES DISTRICT JUDGE